### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

COMMONWEALTH LAND TITLE
INSURANCE COMPANY, *as subrogee*                                    PLAINTIFF

v.                              CASE NO. 4:20-CV-01514-BSM

JMG INVESTMENTS, INC.                                              DEFENDANT

### <u>ORDER</u>

This case was tried to the bench on July 18, 2022.  Having listened to the testimony and reviewed the exhibits introduced into evidence, judgment is entered for JMG Investments, Inc. and against Commonwealth Land Title Insurance Company.

### I.  BACKGROUND

Commonwealth, as subrogee for ARCN 2, is suing JMG for breach of a warranty of title.  JMG conveyed real property to ARCN by warranty deed so that ARCN could construct a Dairy Queen.  The deed, however, failed to list two easements that impaired ARCN's ability to construct the building.  ARCN filed a title insurance claim with Commonwealth, which  paid ARCN $97,500 to resolve the claim.  Commonwealth argues that JMG is liable to it, as ARCN's subrogee, for a breach of warranty of title.

JMG denies Commonwealth's claim, asserting that it settled all of ARCN's potential claims by selling additional property to ARCN at a discount so that ARCN could complete construction of the restaurant.  JMG also contends that the title company's failure to discover the easements must be imputed to ARCN because the title company was ARCN's agent.  JMG finally points out that its offer and acceptance agreement with ARCN states that the

property would be conveyed subject to recorded restrictions and easements, and that the absence of any exceptions in the general warranty deed was due to a mutual mistake.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is a very interesting case that presents a fact scenario worthy of a law school exam.  At its core, this case poses two questions.  First, how much weight should a reasonable finder-of-fact give to undisputed facts showing that a sophisticated buyer negotiated the purchase of real estate, the buyer's title company prepared the purchase contract, performed the title search, prepared the title commitment, the owner's affidavit, and the warranty deed, and sold the title insurance policy, and that after negligently preparing these documents, the buyer's title company advised the buyer that he could file a title insurance claim?  Second, what should a reasonable finder-of-fact conclude when the evidence shows that the title insurer paid the buyer's claim, declined to hold the title company responsible for its negligence, but instead sued the seller, who is the least culpable party?

### A.    Breach of Warranty

Commonwealth's breach of warranty claim fails because there was a mutual mistake regarding the terms contained in the general warranty deed.  ARCN agreed to purchase real property from JMG to build a Dairy Queen restaurant.  The agreement was negotiated between ARCN's president, Umesh Patel, and JMG's vice president, James Gathings.  For the remainder of this order, ARCN and Patel will be used interchangeably and JMG and

Gathings will be used interchangeably.

Patel is a sophisticated businessman who had previously bought and developed several restaurants and hotels. Once Patel and Gathings worked out the terms of the sale, Patel contacted Pamela Blissett of Arkansas Southeast Title Company to prepare a formal offer and acceptance. Blissett had handled most of Patel's previous real estate transactions and was familiar with his business needs. Blissett prepared the offer and acceptance, which stated that JMG would convey the land to ARCN for $225,000, and that the conveyance would be "by general warranty deed except it shall be subject to recorded restrictions and easements, if any." Pl.'s Ex. 7. Blissett prepared the offer and acceptance based solely on Patel's representations of his agreement with Gathings. She had never worked with Gathings and did not communicate with him prior to sending him the finalized offer and acceptance. Patel and Gathings executed the offer and acceptance.

Blissett's employer, Arkansas Southeast Title Company, had a business relationship with plaintiff Commonwealth Land Title Insurance Company. In fact, Commonwealth gave Blissett authority to write title insurance policies for up to $500,000 without receiving prior approval. Blissett performed the title search on the property and found no easements, even though the two gas line easements at issue herein were recorded at the time Blissett conducted her search. The testimony shows that Blisset simply failed to notice the easements. Blissett exercised her authority from Commonwealth and wrote the title insurance policy for ARCN without prior approval. Gathings was not involved in any

discussions between Patel, Blissett, or Commonweath regarding the title insurance policy.

Blissett also prepared the title commitment, the owner's affidavit, and the general warranty deed conveying the property from JMG to ARCN.  She never spoke to Gathings about these documents, and Gathings had no input in their preparation.  Blissett communicated with Patel during this process because she performed her duties on his behalf.  The first time Gathings saw the owner's affidavit and warranty deed was at closing and he had no reason to believe these documents were negligently prepared by ARCN's agent.  Gathings signed both the affidavit and the deed in reliance on Blissett's implicit representations that they were accurate.  In fact, he did not read the deed until after Commonwealth filed this lawsuit.

I find that there was a mutual mistake of fact because the offer and acceptance prepared by Blisset shows that both Patel and Gathings expected the title work and deed would show all recorded easements, and that ARCN agreed to pay $225,000 for the property despite those easements.  Neither ARCN nor JMG expected that the title company engaged by ARCN would fail to document any easements of record.  Furthermore, even if Blisset had properly recorded the easements in the title work, owner's affidavit, and warranty deed, ARCN would have been bound by the offer and acceptance, especially since its agent prepared those documents.  Under those circumstances, had ARCN refused to close the purchase, JMG would have had a breach of contract claim against ARCN.

Finally, while it is true that the offer and acceptance merged into the warranty deed,

*see Croswhite v. Rystrom*, 506 S.W.2d 830, 833 (Ark. 1974), it is also true that JMG's actions were not the cause of a breach. Any claims ARCN may have had were caused by Blissett's negligent failure to discover and document the recorded easements. Commonwealth made a business decision to discharge any claims it may have had against Blissett and Arkansas Southeast Title Company, and to sue JMG instead, even though JMG played no role in the title search or in the preparation of the title documents or warranty deed.

B.    Accord and Satisfaction

Even if ARCN and JMG were not mutually mistaken based on Blissett's faulty title work, owner's affidavit, and deed, JMG and ARCN resolved any disputes they may have had when JMG sold additional property to ARCN to facilitate ARCN's completion of the Dairy Queen.

When Patel learned that easements prevented ARCN from building the Dairy Queen, he met with Blissett to explore potential solutions, including the possibility of purchasing additional land from JMG. Patel told Blissett that he did not want to file a title insurance claim and was just eager to resolve the issue so he could build the restaurant. Patel then met with Gathings on-site, along with Blissett, the contractor, and representatives from the gas company, to discuss how construction of the Dairy Queen could move forward.

Sometime after the on-site meeting, Patel negotiated with Gathings to buy additional adjacent property for $27,000. Although ARCN disputes JMG's contention that it sold the property at a discount, it is found that the property was sold at a discount because the second

5

piece of property sold by JMG was taken from a larger parcel. This sale left JMG with a remaining parcel that is too small to build on, and is therefore far less valuable than it would be if it were sold as one large parcel.

The purpose of the second sale was to resolve the differences between ARCN and JMG. Indeed, the additional property allowed ARCN to complete construction of the Dairy Queen by reconfiguring the building and parking lot. Unbeknownst to Gathings, ARCN filed a title insurance claim against Commonwealth before the close of the second land sale, but ARCN never filed a claim against JMG. Had Gathings known that ARCN filed a title insurance claim upon which JMG could later be sued, he would not have sold the additional property to ARCN.

For these reasons, I conclude that there was a meeting of the minds to resolve any and all claims ARCN may have had against JMG, and that the second land sale is an accord and satisfaction. *See Glover v. Woodhaven Homes, Inc.*, 57 S.W.3d 211, 216 (Ark. 2001).

C.     Damages

Finally, even if there was no mutual mistake and no accord and satisfaction, Commonwealth has no claim for damages against JMG. This is true because its claim for damages is limited to whatever claims ARCN has against JMG, and ARCN has no justifiable claim for damages against JMG. *See Hartford Ins. Grp. v. Carter*, 473 S.W.2d 918, 919 (Ark. 1971). This is the case because JMG and ARCN entered into a valid contract and ARCN got exactly what the contract provided: a piece of property with all recorded

easements.  As provided above, had Blisset included the easements in the title work, owner's affidavit, and warranty deed, ARCN could not have walked away from the contract.  ARCN was bound by the terms of the deal it reached and the contract its agent prepared.

Finally, in that Commonwealth relies on two diminished value appraisals prepared at its direction, I find that the values listed in those appraisals are unreliable.  This is true because, despite the analysis provided in the appraisals, the property sold approximately two years after it was purchased by ARCN, for what Patel characterizes as "a sizeable profit."

### III. CONCLUSION

For the foregoing reasons, judgment is entered for defendants, and this case is dismissed with prejudice.

IT IS SO ORDERED this 26th day of July, 2022.

_____
UNITED STATES DISTRICT JUDGE